RENDERED:  JULY 24, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0111-MR

NATHAN MCCLURE                                                    APPELLANT

v.           APPEAL FROM RUSSELL CIRCUIT COURT
             HONORABLE SARA B. GREGORY, JUDGE
             ACTION NO. 22-CR-00135

COMMONWEALTH OF KENTUCKY                                           APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND EASTON, JUDGES.

CALDWELL, JUDGE:  Nathan McClure ("McClure") appeals from a judgment on a jury verdict convicting him of third-degree arson and first-degree criminal mischief.  We AFFIRM.

# FACTS

This case arose from McClure's setting a fire which spread to his houseboat and then to a building owned by Tommy and Sherry Cook (collectively, "the Cooks"). Unfortunately, the Cooks' building was destroyed by the fire.

Following the building's destruction, Cook was indicted on charges of first-degree criminal mischief and third-degree arson. First-degree criminal mischief consists of one "having no right to do so or any reasonable ground to believe that he or she has such right . . . intentionally or wantonly" destroying property causing a pecuniary loss of more than $500.00. KRS[1] 512.020(1).[2]

"A person is guilty of arson in the third degree if he wantonly causes destruction or damage to a building of his own or of another by intentionally starting a fire or causing an explosion." KRS 513.040(1). *Wanton* is defined in KRS 501.020(3) as follows:

> A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A

---

[1] Kentucky Revised Statutes.

[2] KRS 512.020 was amended in 2026, to take effect in mid-July 2026. All references to KRS 512.020 herein are to the pre-2026-amendment version of this statute in place during the trial court proceedings, which began in 2022 and ended with the December 2024 judgment on the jury's verdict.

-2-

person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto.

In the instant case, there is no dispute that McClure intentionally set a fire on the night in question. However, a key issue at McClure's jury trial was whether McClure had **wantonly** caused the destruction of the Cooks' building.

The Commonwealth presented testimony from witnesses including the Cooks. According to the Cooks, they had previously warned McClure—who kept his houseboat in water close to buildings and land they owned—not to start fires in the area because setting fires near the houseboat could cause their adjacent storage building to burn down. The Cooks also testified they had repeatedly instructed McClure to move the houseboat—especially since they could not get insurance on the storage building due its proximity to the houseboat.

The Commonwealth also presented testimony from 911 dispatchers, emergency responders, and the Cooks' property manager. Some witnesses testified that McClure appeared to be intoxicated on the night in question. The Commonwealth also presented testimony from an emergency responder that the houseboat was made of fiberglass, making it very flammable. Security camera footage of the fire, including instances in which it suddenly expanded and flared higher, was also shown to the jury. The camera was angled to show the back of the Cooks' property with McClure's houseboat and nearby buildings visible.

-3-

An emergency responder, called by the Commonwealth, testified to arriving on the scene and seeing McClure on an excavator trying to tear the portion of the houseboat on fire away from the rest of the houseboat. The responder testified that the excavator also caught fire. He also testified to having to interrupt efforts to fight the storage building fire to put out the fire on the excavator.

At the end of the Commonwealth's case, over defense objection, it presented the first fifteen minutes of the 911 recording after the fire was initially reported. A few calls had been made by McClure to report the spread of the fire and to request assistance. There was also some communication between emergency responders in the portion of the recording presented at trial, as well as other calls regarding the fire.

One person who called three times about the fire chose to remain anonymous and asked if he was speaking with a particular dispatcher in one call.[3] This anonymous caller first called to report that a man was burning a houseboat and to request that firefighters come to a specific location. The second call from

---

[3] When asked by 911 dispatch on one occasion whether the caller was "Kevin," the caller replied in the affirmative. However, the caller otherwise chose not to identify himself in 911 calls and asked that McClure not be informed about his calls. This caller also asked whether he was speaking with a particular dispatcher in the second call. It is unclear whether the anonymous caller asked to speak to that dispatcher because he had spoken with him previously about the fire or for other reasons.

this same caller reported the fire was escalating, provided a location, and expressed

a fear of the fire spreading to his home.

In his third and last call, the anonymous caller said he was the guy

who had called before about a fire, but he declined to give his name. He stated:

> The guy that's burned this place, that's f****ing
> responsible one for it, is wild as a buck. He just took off
> in a ton truck with a track on the back of it and piled it,
> son of a b****, right over here across from Stephens Pipe
> and Steel in their parking lot. Just ditched it. I think he's
> trying to run off.

(Video Record ("VR") 11/14/24 at 2:12:43-2:12:59.) When the dispatcher asked

who the caller was referring to, the caller replied "Nathan McClure." (VR

11/14/24 at 2:13:00-2:13:06.)

After this 911 recording was played for the jury, the defense presented

its case.

The defense case began with the testimony of McClure's sister. She

stated she had seen McClure burn items in the same area several days before the

night in question, but she had not been concerned that he would set the houseboat

on fire because he always wanted to take care of the houseboat. She admitted on

cross-examination that the houseboat had or likely had engines, batteries and/or

generators, although she had not actually seen these components.

-5-

McClure also testified in his own defense. McClure admitted that he intentionally set a fire—to burn wallboard from the houseboat, which he planned to dismantle and then refurbish.

McClure claimed he was careful to take steps to prevent the fire from spreading and destroying others' property. For example, McClure testified he brought a water hose with him as well an excavator to dig holes to prevent the spread of fire, and he carefully watched the fire. However, he admitted on cross-examination that he was aware that the Cooks may have cut off the water due to a prior history of water leaks and that the water line did not work that time. He also admitted that he had left his wrench, which he needed to turn the water back on, in a different vehicle.

McClure testified that he became aware of the fire's spread when he was sitting in his truck and his dog would not stop barking. He testified to calling 911 after the fire spread.[4]

McClure testified that after calling 911 a third time, he decided to try to use an excavator to pull the houseboat farther away from the storage building. He stated he took his truck to the Stephens Pipe and Steel parking lot to unload the

_____

[4] The Commonwealth later argued in closing that McClure's testimony about being alerted to the fire's spread by the dog's barking showed that McClure was not watching the fire. The Commonwealth also argued in closing that McClure waited too long to call 911—until the fire became extremely difficult to control.

excavator. He testified that when he got back, the fire had flashed up and emergency responders had arrived. He stated that the handles had gotten too hot to touch and that all he could do was to get back out of there. He testified it was very smoky and he was scared and hyperventilating. He denied drinking any alcoholic beverages that day.

After the evidence concluded, the attorneys presented closing arguments. In closing, the prosecutor argued that no reasonable person would start a fire close to a boat with a "massive battery bank" which might have a dozen or possibly even twenty marine batteries, which were flammable. (VR 11/15/24 9:50:59-9:51:30.) The prosecutor also surmised the houseboat likely had at least two diesel engines with fluids in them and hydraulic lines with flammable material. He argued no reasonable person would start a fire nearby all these flammable materials on a boat. He also suggested that the security video showed explosions occurring. (McClure asserts on appeal that the prosecutor's statements about specific components of the houseboat making it especially flammable and about explosions occurring were not supported by the evidence.)

The jury found McClure guilty of both third-degree arson and first-degree crimina

charge[5] to be served concurrently and the trial court sentenced McClure

accordingly.

McClure filed a timely appeal. Further facts will be set forth as

needed in our analysis.

## ANALYSIS

On appeal, McClure makes two primary arguments. First, he

contends the trial court erred in admitting the first fifteen-minute portion of the 911

recording about the fire, particularly the third call from the anonymous caller.

Second, McClure argues his conviction must be reversed due to alleged

prosecutorial misconduct because the prosecutor made statements about explosions

and about details of the houseboat's components and flammability which, in his

view, were not supported by the evidence or reasonable inferences therefrom.

McClure contends the alleged error about admission of the 911 recording was

preserved, although he admits the issue about the prosecutor's closing statement

was not preserved.

---

[5] Both first-degree criminal mischief and third-degree arson are Class D felonies, despite some stated exceptions for first-degree criminal mischief which apparently do not apply here. *See* KRS 512.020(2); KRS 513.040(3). A Class D felony is subject to an authorized maximum term of imprisonment of one to five years. KRS 532.060(2)(d).

**Issue About Admissibility of the 911 Recording was Generally Preserved**

The Commonwealth admits McClure argued to the trial court and thus preserved the specific issue about whether the 911 recording should be excluded due to Confrontation Clause concerns. However, the Commonwealth contends other specific issues about the 911 recording's admissibility were not preserved.

While McClure's trial counsel may not have made identical arguments or cited all the authority cited in McClure's appellate briefs, McClure clearly challenged the admissibility of the 911 statements to the trial court based on our review of the record and thereby generally preserved the allegation of error in the admission of this evidence. *See Gasaway v. Commonwealth*, 671 S.W.3d 298, 313-14 (Ky. 2023).

**Standard of Review for Evidentiary Issues**

We assume for the sake of argument that all issues related to the admission of statements in the 911 recording were properly preserved for our review. Thus, we review the trial court's rulings on the admissibility of this evidence for abuse of discretion. *Woodard v. Commonwealth*, 147 S.W.3d 63, 67 (Ky. 2004). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Id*. (internal quotation marks and footnote omitted).

While we review the trial court's evidentiary rulings for abuse of discretion, we also keep in mind that not every error in ruling on evidentiary issues calls for reversal of a judgment. *See* KRE[6] 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). *See also* RCr[7] 9.24:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order, or in anything done or omitted by the court or by any of the parties, is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.

With these parameters in mind, we consider the specific appellate arguments about admission of the 911 recording—starting with Confrontation Clause arguments.

### Trial Court Properly Determined 911 Statements Were Non-Testimonial and Thus Not Subject to Confrontation Clause Requirements

McClure contends the admission of the anonymous caller's statements in the 911 recording violates his Confrontation Clause rights pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)

---

[6] Kentucky Rules of Evidence.

[7] Kentucky Rules of Criminal Procedure.

-10-

(hereinafter, "*Crawford*"). As noted in *Crawford*, 541 U.S. at 42, the Sixth Amendment to the United States Constitution provides in pertinent part: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This provision is commonly referred to as the Confrontation Clause and applies to state and federal prosecutions. 541 U.S. at 42. (A similar provision appears in KY. CONST. § 11 which states: "In all criminal prosecutions the accused has the right . . . to meet the witnesses face to face[.]")

The United States Supreme Court made clear in *Crawford* that the Confrontation Clause of the Sixth Amendment does not apply solely to in-court testimony, but also to testimonial out-of-court statements sought to be introduced at trial. 541 U.S. at 50-51. Moreover, the Court held that the admissibility of such testimonial statements could not properly be left simply to the rules of evidence, including hearsay rules, but must conform with the requirements of the Sixth Amendment Confrontation Clause. *Id*. at 61.

To properly admit a testimonial out-of-court statement without the person who made the statement being present at trial for cross-examination, the person who made the statement must be unavailable and the accused must have had a prior opportunity for cross-examination. *Id*. at 68. On the other hand, the Supreme Court held that the admission of non-testimonial out-of-court statements

-11-

is not governed by the Confrontation Clause and can be properly determined under state evidence law, including hearsay rules. *Id.*

The key to whether Confrontation Clause requirements apply is whether an out-of-court statement is testimonial. In *Crawford*, the Supreme Court held that an out-of-court statement to police during an interrogation was testimonial and thus governed by Confrontation Clause requirements. *Id.* at 51-52; 68.

On the other hand, the Supreme Court later determined that a particular 911 call recording was not testimonial, after setting forth a test for determining whether out-of-court statements are testimonial:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution

*Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273-74, 165 L. Ed. 2d 224 (2006) (hereinafter, "*Davis*"). *See also id*. at 826-28.

In the instant case, the trial court determined that the anonymous caller's statements in the 911 recording were not testimonial because they were aimed at obtaining emergency assistance. Thus, the trial court concluded that the

-12-

rule set forth in *Crawford* governing the admissibility of testimonial statements did not apply. (And as we will discuss later, the trial court determined these out-of-court statements were admissible under exceptions to the hearsay rule.)

In making its determination that the statements were not testimonial, the trial court indicated it reviewed not only *Crawford* and *Davis* but also an unpublished opinion from the Kentucky Supreme Court which the prosecution cited for its consideration to argue statements in 911 calls were not testimonial.[8]

On appeal, McClure argues that the trial court erred in admitting into evidence the third call[9] from the anonymous caller because this call "includes accusatory statements that would be considered testimonial and clearly fall within the type of evidence that the Confrontation Clause was intended to protect against." (Appellant red brief, page 23.)

McClure notes that the 911 recording indicates that the third anonymous call was preceded by McClure's calls (as well as the first two

---

[8] Specifically, the trial court took note of *Talley v. Commonwealth*, No. 2003-SC-0869-MR, 2005 WL 387443 (Ky. Feb. 17, 2005) (unpublished) (hereinafter, "*Talley*"). We note *Talley* was rendered after *Crawford* but before *Davis*. *Talley* states: "We are persuaded that a 911 audiotape recording, admissible under KRE 803(1), is not prohibited by *Crawford* because it is not a testimonial statement. A 911 call does not implicate the principal evil at which the Confrontation Clause was directed." *Id.* at *3.

[9] McClure's brief states that this same anonymous caller first called to report that a man was burning a houseboat and to request that firefighters come to a specific location, and that the second call from this same caller reported the fire was escalating, provided a location, and expressed a fear of the fire spreading to his home. *See* (Appellant red brief, page 23).

anonymous calls reporting the fire) and communications between fire departments about a mass response to the fire. He contends the third anonymous call was no longer about an ongoing emergency but simply offered accusatory statements aimed at obtaining punishment for McClure.

In response, the Commonwealth contends there was still an ongoing emergency when the third anonymous call was placed, and the third call was also aimed at obtaining emergency assistance. It also points out that McClure testified that after he unloaded the excavator at Stephens Pipe and Steel, the fire department and police arrived as he was returning to the fire. So, the Commonwealth asserts that when the anonymous caller described McClure's actions (including getting in a truck, unloading it in the Stephens Pipe and Steel parking lot and running away) in the third call, the caller was still trying to get an emergency response.

Moreover, the Commonwealth cites authority holding that a caller's statements in a 911 recording—including those in which he/she identified the perpetrator while describing the emergency, requesting assistance, and responding to the 911 operator's questions—were non-testimonial. These published precedents discerned no reversible error in the admission of these statements at trial despite the declarant's not being present at the trial. *See Davis*, 547 U.S. at 817-18 and 826-28. *See also McDonald v. Commonwealth*, 436 S.W.3d 534, 537-38 (Ky. App. 2013) (hereinafter, "*McDonald*").

-14-

Like the trial court, we agree with the Commonwealth that even the third anonymous call was aimed at obtaining emergency assistance and is therefore non-testimonial. Specifically, this last anonymous call recounted observing the person who had started the fire—whom the caller identified as McClure—engaging in actions including getting in a truck and unloading it and apparently trying to get away. The caller's reports that the person responsible for the fire appeared to be trying to get away could be reasonably construed as an implicit request for law enforcement to be immediately sent to the scene on an emergency basis.

The fact that the caller described some events which had just happened shortly before he called does not render his statements testimonial—especially since he was not responding to formal police questioning but, at most, responding to the 911 dispatcher's informal questions aimed at addressing the emergency. As we stated in *McDonald:*

> Calls made to a 911 dispatcher may amount to police interrogation under certain circumstances. The crux of the determination is whether or not the statements were elicited to "resolve the present emergency," or to learn what happened in the past. The formality of the questioning as compared to a formal police interrogation is also relevant.
>
> In this case, the 911 call by Artis took place as the assault was happening. The fear and anxiety caused by the ongoing emergency are readily apparent. Artis repeatedly states that Andrews is being beaten and

-15-

describes the assault as it is occurring. The simple fact that she recounted things from moments earlier, for example her statement that Andrews "had been pushed down the stairs," does not change the nature of the statements. McDonald left the scene only moments before the call ended, and even then remained on the property. Likewise, the operator's decision to elevate the call to a "code three" was not testimonial in nature. Instead, the statement furthers the proposition that the call was intended, by both parties, to address an ongoing emergency and was not an interrogation to learn the substance of past events. When considering the call as a whole, it is also apparent that the communication did not involve the formality associated with a police interrogation. As a result, the trial court did not abuse its discretion by admitting the entire 911 call into evidence.

*Id.* at 537-38 (citations omitted).

As in *McDonald*, the third anonymous call as a whole was not conducted with the formality of a police investigation and relayed information relevant to obtaining emergency assistance. Moreover, one could reasonably construe the profanity and name-calling used by the anonymous caller as reflecting anxiety, fear or frustration, *see id.*, instead of or in addition to the caller's personal opinion of McClure.

In sum, the trial court did not err in determining the anonymous caller's statements (including those in the third call) to be non-testimonial and therefore not subject to Confrontation Clause scrutiny.

**No Reversible Error in Trial Court's Admitting Statements as Hearsay
Exceptions for Present Sense Impressions and Excited Utterances**

KRE 801(c) defines *hearsay* as "a statement, other than one made by
the declarant while testifying at the trial or hearing, offered in evidence to prove
the truth of the matter asserted." KRE 802 states: "Hearsay is not admissible
except as provided by these rules or by rules of the Supreme Court of Kentucky."

KRE 803 provides in pertinent part:

The following are not excluded by the hearsay rules,
even though the declarant is available as a witness:

(1) Present sense impression. A statement
describing or explaining an event or condition
made while the declarant was perceiving the
event or condition, or immediately thereafter.

(2) Excited utterance. A statement relating to a
startling event or condition made while the
declarant was under the stress of excitement
caused by the event or condition.

The trial court determined that the anonymous caller's statements in the 911
recording were admissible as present sense impressions and as excited utterances.
*See* KRE 803(1)-(2).

McClure argues the third anonymous call to 911 was not a present
sense impression. He argues this call consisted solely of personal opinions about
past conduct and past events such as McClure's taking off in a truck, ditching the
truck and running off (in the caller's perception). McClure contends there are no

-17-

indications of the statement's reliability or about how much time had elapsed between the anonymous caller's viewing these events and his calling 911 for the third time, while not disclosing his (the caller's) identity.

McClure also argues: "The party seeking admission should be responsible for answering questions about the time lapse between the events and the call." (Appellant red brief, pages 28-29.) However, he cites no authority to support this contention. Given this failure, we may consider this contention waived. *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005). "Such a terse, conclusory assertion wholly unaccompanied by meaningfully developed argument or citation to authority is insufficient to merit appellate relief." *Schell v. Young*, 640 S.W.3d 24, 32 (Ky. App. 2021).

McClure notes that the unpublished *Talley* opinion considered by the trial court discussed only the present sense impression hearsay exception and not excited utterances. Nonetheless, the trial court stated it was admitting the statements not only as present sense impressions but also as excited utterances.

McClure further cites authority from our Supreme Court indicating a court should consider several factors in deciding whether out-of-court statements can be admitted as excited utterances. *See Thomas v. Commonwealth*, 170 S.W.3d 343, 351 (Ky. 2005):

> (i) lapse of time between the main act and the declaration
> [the only factor considered here], (ii) the opportunity or

likelihood of fabrication, (iii) the inducement to fabrication, (iv) the actual excitement of the declarant, (v) the place of the declaration, (vi) the presence there of visible results of the act or occurrence to which the utterance relates, (vii) whether the utterance was made in response to a question, and (viii) whether the declaration was against interest or self-serving.

(Brackets in original.) McClure argues the third anonymous call was a "self-serving rant" casting aspersions on McClure's character and that there was a high likelihood of fabrication because of the caller's concealment of his identity. (Appellant red brief, page 30.) He also contends that it is unclear whether there were visible results of the acts described in the statements due to the camera angle of the security footage looking at the back of the property on the night in question.

However, as the Commonwealth points out, the caller's statements about McClure's starting the fire and dumping his truck at Stephens Pipe and Steel were supported by McClure's testimony. Also, even if the caller was not describing the events exactly simultaneously with their occurrence, he was describing events in the third call which had just happened during the less than fifteen-minute time frame between his first 911 call and his last (third) call on the recording. We note the dispatcher had just told another caller that fire trucks were on their way just a minute or two before this third call from the anonymous caller came in and there was no indication on the 911 recording that fire trucks or other emergency responders had arrived prior to this call.

-19-

As the anonymous caller was describing what he saw or otherwise observed as the events occurred or immediately thereafter, the statements described can reasonably be viewed as present sense impressions. KRE 803(1). We find no error in the trial court's determining that the 911 statements at issue were present sense impressions.

Moreover, we find no error in the trial court's perceiving at least some of the anonymous caller's statements to be excited utterances. After all, the statements themselves indicate the caller viewed McClure's actions and the resulting rapidly spreading fire as startling events causing the caller great stress. KRE 803(2). Also, one could reasonably view the admitted 911 statements—perhaps especially those in the third call—as spontaneous and as reflecting the anonymous caller's agitated state shortly after witnessing such startling events. *See generally Shackles v. Commonwealth*, 730 S.W.3d 832, 847 (Ky. 2025).

Therefore, the lower court did not abuse its discretion in admitting the anonymous caller's statements to 911 as excited utterances and/or present sense impressions. Moreover, any error in its admission of these statements was harmless considering the other evidence presented at trial—including McClure's testimony admitting that he set the fire close to the houseboat, others' testimony about the flammability of the houseboat, and testimony about the Cooks' warning

-20-

McClure not to set fires since that could easily cause their nearby storage building to burn down.  *See* RCr 9.24.

### No Reversible Error in Determination that 911 Statements Were Relevant and that Their Relevance Was Not Outweighed by the Risk of Undue Prejudice

McClure complains on appeal that the trial court failed to weigh the relevance of the 911 statements against any risk of undue prejudice to him in violation of KRE 402 and KRE 403.  We disagree, even if we assume for purposes of discussion that McClure preserved this argument.

KRE 401 defines *relevant evidence* as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 402 states:  "Evidence which is not relevant is not admissible" but also states: "All relevant evidence is admissible" unless otherwise provided by applicable constitutional provisions, statutes, or court rules.  KRE 403 states:  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

Defense counsel made arguments that the anonymous caller's 911 statements simply offered his personal opinion about McClure or cast aspersions

-21-

about McClure's character, which would not aid the jury in its determinations. Despite this, the statements also offered more pertinent information about the time and location of events at issue. *See generally Baumia v. Commonwealth*, 402 S.W.3d 530, 543 (Ky. 2013).

Therefore, we discern no abuse of discretion in the trial court's implicit determination that concerns about prejudice from the caller's opinions or name-calling were outweighed by the information provided in these calls for emergency assistance. Moreover, to the extent that the trial court erred in this regard, we conclude that the error was harmless considering the other evidence presented at trial. RCr 9.24.

**No Reversible Error in Admitting 911 Statements Considering KRE 404**

McClure asserts that the Commonwealth did not provide any notice that it would be presenting character evidence, citing KRE 404(c). KRE 404(c) requires that the Commonwealth provide pretrial notice of any intent to present evidence pursuant to KRE 404(b). KRE 404(b) concerns evidence of "Other crimes, wrongs, or acts."

None of the anonymous caller's statements to 911 describe any prior crimes, wrongs, or acts committed by McClure—despite this caller generally referring to McClure as being wild as a buck and other derogatory names. Instead, the statements report observations of McClure's starting the fire and of McClure's

further actions that night prior to the emergency responders' arrival. Thus, the Commonwealth was not required to provide pretrial notice of these statements pursuant to KRE 404(b) since the statements did not describe prior bad acts. So, we discern no error pursuant to KRE 404(b) or KRE 404(c).

McClure asserts on appeal that the anonymous caller's descriptions of McClure as being a "son of a b****" or "wild as a buck" amounted to improper use of character evidence violating KRE 404(a). Subject to certain stated exceptions, KRE 404(a) provides: "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion[.]"

Perhaps the anonymous caller's references to McClure in less than flattering terms could be construed as evidence of his character that would not be helpful to the jury. Even so, these unflattering descriptions were mixed in with more specific statements in the same call in which the caller reported more pertinent information for obtaining emergency assistance.

Given the evidence as a whole presented at trial, any error in admitting this evidence of the anonymous caller's negative assessment of McClure's character along with more pertinent information in the same call was harmless. RCr 9.24.

In sum, even assuming that McClure's evidentiary arguments were all adequately preserved, we discern no reversible error in the trial court's admitting into evidence a portion of the 911 recording—including the anonymous caller's third call.

**Standard of Review for Unpreserved Allegations of Prosecutorial Misconduct**

On appeal, McClure contends his convictions must be reversed due to alleged prosecutorial misconduct regarding references to explosions and the detailed statements about the houseboat's components and their flammability in the prosecutor's closing argument. He asserts these statements were not directly supported by witnesses' testifying to hearing or seeing any "explosion" or by any similarly detailed statements concerning the houseboat's components and flammability in any witness's testimony.

As both parties acknowledge, attorneys have great latitude in making closing arguments but should not argue facts which are not supported by evidence or by reasonable inferences from the evidence. *See, e.g.*, *Garrett v. Commonwealth*, 48 S.W.3d 6, 16 (Ky. 2001).

McClure admits that this issue was not raised to the trial court and therefore was not properly preserved for appeal. However, he requests we conduct a palpable error review on alleged prosecutorial misconduct. Thus, we review this issue for palpable error resulting in manifest injustice pursuant to RCr 10.26.

As McClure acknowledges, we could only properly reverse for unpreserved allegations of prosecutorial misconduct where the misconduct is flagrant. This is determined by considering factors such as whether a prosecutor's remarks are misleading or unduly prejudicial, whether the remarks in question are isolated or extensive, and whether the evidence against the accused is strong. *See Hannah v. Commonwealth*, 306 S.W.3d 509, 518 (Ky. 2010), *superseded by statute on other grounds as stated in Stone v. Commonwealth*, No. 2024-SC-0212-MR, 2025 WL 2998790, at *3 (Ky. Oct. 23, 2025) (unpublished). *See also Brown v. Commonwealth*, 313 S.W.3d 577, 627 (Ky. 2010) ("Where there was no objection, we will reverse only where the misconduct was flagrant and was such as to render the trial fundamentally unfair.").

**Prosecutor's Remarks in Closing Argument Did Not Amount to Flagrant Misconduct or Create Palpable Error Resulting in Manifest Injustice**

Having reviewed the record, we conclude that the prosecutor's references to explosions and detailed statements about the houseboat's components and flammability in closing argument did not amount to flagrant misconduct and did not create a palpable error resulting in manifest injustice.

Perhaps McClure is correct that no witness explicitly testified to witnessing or otherwise hearing about any "explosions." However, an explosion can connote "a large-scale, rapid, or spectacular expansion or bursting out or forth." *Explosion*, MERRIAM-WEBSTER ONLINE DICTIONARY (last accessed Jul. 15,

-25-

2026).  Moreover, there was witness testimony, 911 statements, and security camera footage about sudden, large expansions or flare-ups of the fire—which one might reasonably refer to as explosions (despite any lack of testimony explicitly referring to an explosion or something exploding).  So, we cannot say that the prosecutor's references to explosions were totally unsupported by evidence or reasonable inferences therefrom.

McClure contends no witness testified to whether there was a bank of marine batteries or any fluids or fuel on the boat.  McClure is perhaps correct that the prosecutor's detailed speculations about the houseboat's likely components and the flammability of such components were not directly supported by any witness testimony which addressed these matters in the same degree of detail.  However, the Commonwealth correctly points out that an emergency responder testified that the houseboat was made of fiberglass, which is highly flammable.  The Commonwealth also correctly points out that McClure's sister also admitted that McClure's houseboat would likely have generators and/or batteries, although she specifically denied seeing such generators or batteries.

Also, the Cooks testified to having told McClure not to set any fires in the area where he kept his houseboat adjacent to their property and warned him that setting such a fire could burn their building down.  There was also testimony that the Cooks were unable to get insurance on the building while the houseboat

-26-

remained adjacent to their property. The testimony about being unable to get insurance on the building due to the houseboat's proximity could support a reasonable inference that the houseboat was highly flammable.

The main issue at trial was whether McClure acted wantonly in intentionally setting the fire and in the way he monitored the fire and responded to its spread. The exact components of the houseboat were not necessarily something which the jury needed to determine. Nonetheless, evidence was presented which showed or at least supported reasonable inferences that the houseboat was rather flammable.

Moreover, the prosecutor's remarks in closing argument about details of the houseboat's components and about explosions were relatively brief—at most, these remarks lasted a few minutes out of a multi-day trial. Thus, we do not find any flagrant prosecutorial misconduct which warrants granting relief on appeal, considering the lack of preservation.

While we express no opinion as to whether the prosecutor's statements in closing argument could amount to reversible prosecutorial misconduct if properly preserved by contemporaneous objection, no palpable error occurred resulting in manifest injustice based on our review of the evidence in the record. We decline to reverse the judgment on the jury verdict on this basis.

Further arguments in the parties' briefs which are not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we **AFFIRM**.


ALL CONCUR.


| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Jennifer Wade<br>Frankfort, Kentucky | Russell Coleman<br>Attorney General of Kentucky |
| | Melissa A. Pile<br>Assistant Attorney General<br>Frankfort, Kentucky |